**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JOAN RILEY and
LINDA SCOTT,
individually and on behalf of
behalf of all others similarly situated,

        Plaintiffs,                              **CLASS ACTION**

v.

HERITAGE PROPERTY & CASUALTY
INSURANCE COMPANY,

        Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Joan Riley and Linda Scott, file this Class Action Complaint, individually and on behalf of all others similarly situated, against Defendant, Heritage Property & Casualty Insurance Company, and allege:

**INTRODUCTION**

1. Pursuant to a standardized homeowners insurance policy with insureds like Plaintiffs, Heritage must pay interest on claims it fails to pay within a certain timeframe. Heritage fails to do so, breaching the insurance contract and leading Plaintiffs to bring this class action on behalf of themselves and thousands of other Heritage insureds.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff Joan Riley ("Riley") is a resident of Miami-Dade County and a citizen of Florida.

3. Plaintiff Linda Scott ("Scott"") is a resident of Miami-Dade County and a citizen of Florida.

4. Defendant, Heritage Property and Casualty Insurance Company ("Heritage"), is a Delaware corporation.

5. <u>Subject Matter Jurisdiction</u>.  The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (i) the matter in controversy exceeds $5 million, exclusive of interest and costs; (ii) there are members of the proposed Class who are citizens of different states than Heritage; and (iii) there are in the aggregate more than 100 members of the proposed class.

6. <u>Personal Jurisdiction</u>.  This Court has specific personal jurisdiction over Heritage pursuant to Section 48.193(1)(a), Fla. Stat., because Heritage operates, conducts, engages in and carries on a business or business venture in this state; has an office or agency in this state; contracts to insure people, property or risk in this state at the time of contracting; and breached a contract in this state.

7. <u>Venue</u>.  Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claim occurred in this District, and because Heritage is subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

8. Plaintiffs purchased from Heritage a residential property insurance policy for their respective homes (the "Policy").

9. The Policy contains a "Loss Payment" provision stating that if Heritage does not pay or deny a claim within 90 days of receiving notice, then Heritage must pay interest:

> 10. **Loss Payment**.
>
> We will adjust all losses with you.
>
> We will pay you unless some other person named in the policy is also legally entitled to receive payment.

> Loss will be payable:
>
> a. 20 days after we receive your proof of loss and reach written agreement with you; or
>
> b. 60 days after we receive your proof of loss; and;
>
> (1) There is an entry of a final judgment; or
>
> (2) There is a filing of an appraisal award or mediation settlement with us.
>
> c. **Within 90 days after we receive notice of an initial, reopened, or supplemental property insurance claim from you**, where for each initial, reopened, or supplemental property insurance claim, **we shall pay or deny such claim or portion of such claim, unless there are circumstances beyond our control which reasonably prevent such payment**.
>
> Paragraph c. above does not form the sole basis for a private cause of action against us.

(emphasis in text added). A copy of Plaintiff Riley's declarations page, and the page from the HPC HO-3 09-13 policy form referred to in that declarations page containing the Loss Payment provision, are attached as Exhibit 1. Plaintiff Riley does not have a complete copy of the Policy, but believes a complete copy is contained within Heritage's records. A copy of Plaintiff Scott's Policy is attached as **Exhibit 2.**

10. Although not referenced in the Policy, Section 627.70131(7)(a), Fla. Stat., provides that interest must be included with claim payments not made within 90 days of notice of loss. It further provides that if factors beyond an insurer's control reasonably prevent payment from being made within 90 days, then payment must be made within 15 days of those factors ceasing to exist. An insurer's failure to make payment within 15 days also requires the insurer to pay interest:

> Within 90 days after an insurer receives notice of an initial, reopened or supplemental property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim unless the failure to pay is caused by factors beyond the control of the insurer which reasonably prevent such payment. . . . **Any payment of** an initial or supplemental claim or portion of such **claim made 90 days after the insurer receives notice of the claim, or made more**

3

> **than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment**, whichever is later, **bears interest at the rate set forth in s. 55.03**. **Interest begins to accrue from the date the insurer receives notice of the claim**. . . . The provisions of this subsection may not be waived, voided, or nullified by the terms of the insurance policy.

Fla. Stat. § 627.70131(7)(a).

11. The statute further provides that "The provisions of this subsection may not be waived, voided, or nullified by the terms of the insurance policy." The Policy's language prohibiting paragraph c. of the Loss Payment provision from "form[ing] the sole basis for a private cause of action against us" improperly alters the statute's language prohibiting *the statute* from "form[ing] the sole basis for a private cause of action."

12. On September 10, 2017, Plaintiffs' homes were damaged by wind and water from Hurricane Irma. Plaintiffs each provided Heritage with notice of an insurance claim seeking to cover the damage (the "Claim").

13. Heritage acknowledged that each Plaintiff suffered an insured loss, but Plaintiffs and Heritage failed to agree on the value of that loss.

14. The Policy contains an appraisal clause designed to resolve disputes as to the value of insured losses and to determine the amounts owed to the insured. In accordance with that clause, Plaintiffs' disputes with Heritage each went to an appraisal panel.

15. On January 10, 2019, a panel issued an Appraisal Award to Riley in the amount of $97,546.48.

16. On August 5, 2019, a panel issued an Appraisal Award to Scott in the amount $240,419.57.

17. On July 10, 2019, a panel issued an Appraisal Award to Hyppolite in the amount of $46,569.99.

4

18. However, Heritage failed to make payment of the awards within 15 days and failed to pay Plaintiffs any interest on Plaintiffs' Claims.

19. Under Florida law, which applies to Plaintiffs' and all Class members' policies, even when there is a dispute as to the amount of a debt owed, once the debt is determined to be due, interest is allowed from the date the debt was due in accordance with the contract. This rule is applied to all contracts, including obligations owed under insurance contracts.

## **CLASS ALLEGATIONS**

20. Plaintiffs bring this action individually and on behalf of others similarly situated as members of a proposed class of:

> All persons insured by a residential property insurance policy issued by Heritage Property & Casualty Insurance Company who, since September 9, 2017, (1) gave notice of an initial or supplemental claim or portion of such claim for loss insured under the policy; (2) had the amount of loss payable on the claim determined by an appraisal process; (3) did not file suit on the claim; and (4) were paid by Heritage Property & Casualty Insurance Company for the claim more than 90 days after it received notice of the claim or more than 15 days after the amount of the loss was determined by an appraisal award, whichever is later.

21. Excluded from the Class are Heritage and its directors, officers and employees, and the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

22. This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, because it meets all the requirements of Rule 23(a)(1-4), including the numerosity, commonality, typicality and adequacy requirements, and it satisfies the requirements of Rule 23(b)(3), in that the predominance and superiority requirements are met.

23. Numerosity. The members of the Class are so numerous that joinder of all members is impracticable. Although Plaintiffs do not know the exact number of Class members as of the

date of filing, Plaintiffs believe that there are more than 1,000 Class members throughout the United States.

24. <u>Commonality</u>.  There are numerous questions of fact or law that are common to Plaintiffs and all the members of the Class.  Common issues of fact and law predominate over any issues unique to individual Class members.  Issues that are common to all Class members include, but are not limited to:

    a. whether Heritage failed to timely pay Class members' insurance claims pursuant to the Policy's Loss Payment provision and the statute referenced in that provision;

    b. whether Heritage breached the Policy by failing to pay interest to Class members; and

    c. the relief that should be afforded to Plaintiffs and the Class.

25. <u>Typicality</u>.  Plaintiffs have claims that are typical of the claims of all members of the Class.  Plaintiffs' Policy contained the same Loss Payment provision as the other Class members' policies.  (Heritage issues homeowner's insurance policies on standardized forms that are filed with the Florida Office of Insurance Regulation).  Like the other Class members, Plaintiffs are owed interest under the Policy because Heritage failed to timely pay Plaintiffs' claims.

26. <u>Adequacy of Representation</u>.  Plaintiffs will fairly and adequately represent the interests of the members of the Class.  Plaintiffs do not have claims that are unique to Plaintiffs and not the other Class members, nor are there defenses unique to Plaintiffs that could undermine the efficient resolution of the claims of the Class.  Further, Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in class action litigation, to represent Plaintiffs.  There is no hostility between Plaintiffs and the unnamed Class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

27. <u>Predominance</u>. Common questions of law and fact predominate over questions affecting only individual Class members. The only individual issues likely to arise will be the amount of damages recovered by each Class member, the calculation of which does not bar certification.

28. <u>Superiority</u>. A class action is superior to all other feasible alternatives for the resolution of this matter. Individual litigation of multiple cases would be highly inefficient and would waste the resources of the courts and of the parties. The damages sought by Plaintiffs and Class members are relatively small and unlikely to warrant individual lawsuits given the fees and costs, including expert costs, required to prosecute the claims.

29. <u>Manageability</u>. This case is well suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a classwide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

30. <u>Ascertainability</u>. Class members are readily ascertainable. The class members are identifiable from information and records in the possession, custody or control of Heritage.

31. Plaintiffs have retained counsel to protect Plaintiffs' rights under the Policy.

32. All conditions precedent to this action have occurred or have been waived.

### **COUNT I: BREACH OF CONTRACT**

33. Plaintiffs incorporate the allegations of paragraphs 1 through 31 as if fully set forth herein.

34. Plaintiffs and Heritage entered into a contract (the Policy) whereby Heritage agreed to insure Plaintiffs' residence for losses covered under the terms of the Policy.

35. Plaintiffs suffered an insured loss and made a claim under the Policy.

36. On the date the Appraisal Award was issued to each Plaintiff, there were no longer factors beyond Heritage's control that reasonably prevented it from making the claim payment owed to Plaintiffs.

37. Yet Heritage failed to pay the principal amount owed to Plaintiffs pursuant to the Appraisal Award within 15 days of the Appraisal Award's issuance.

38. As a result of Heritage's failure to timely pay, Plaintiffs were entitled to payment of interest as required by the Policy's Loss Payment provision and the statutory language incorporated in that provision. But Heritage breached the Policy by failing to pay Plaintiffs any interest at the rate set forth in Section 55.03, Fla. Stat., from the date Heritage received notice of Plaintiffs' claims.

39. As a result of Heritage's breach of the Policy, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs, individually and on behalf of all Class members, respectfully demand judgment against Defendant, Heritage Property & Casualty Insurance Company, for:

(a) Damages;

(b) Pre-judgment and post judgment interest;

(c) Attorneys' fees and costs; and

(d) Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: September 9, 2022

**RODRIGUEZ TRAMONT & NUÑEZ P.A.**

By: /s/ *Frank R. Rodriguez*
    Frank R. Rodriguez
    Florida Bar No. 348988
    Primary email: frr@rtgn-law.com
    Paulino A. Núñez Jr.
    Florida Bar No. 814806
    Primary email: pan@rtgn-law.com
    255 Alhambra Circle
    Suite 1150
    Coral Gables, FL 33134
    Telephone: (305) 350-2300
    Facsimile: (305) 350-2525

**KNECHT LAW GROUP**

    /s/ *Michael C. Knecht*
    Michael C. Knecht, Esq.
    658 W. Indiantown Road, Suite 211
    Jupiter, Florida 33458
    Phone: 561 745 2110
    Email: mck@mikeknecht.com
    susan@mikeknecht.com
    Florida Bar No: 475815

Respectfully submitted,

**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**

By: /s/*Jason Kellogg*
    Jason K. Kellogg, P.A.
    Florida Bar No. 0578401
    Primary email: jk@lklsg.com
    Lawrence A. Kellogg
    Florida Bar No. 328601
    Primary email: lak@lklsg.com
    200 Southeast Second Avenue
    Miami Tower, 36th Floor
    Miami, Florida 33131
    Telephone: (305) 403-8788
    Facsimile: (305) 403-8789